O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| T.D.W.; et al. | ) | Case No. CV 08-232 CAS (JWJx) |
| Plaintiffs, | ) | |
| | ) | **ORDER DENYING PLAINTIFFS'** |
| vs. | ) | **MOTION FOR NEW TRIAL AND** |
| | ) | **DENYING DEFENDANTS' RULE 50** |
| | ) | **MOTIONS** |
| RIVERSIDE COUNTY; et al. | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## I.    INTRODUCTION AND BACKGROUND

On February 25, 2008, Thelma Byrd, guardian ad litem for minor plaintiff T.D.W.; Diane Rust, guardian ad litem for minor plaintiff B.D.R.; and Karen Phelps, guardian ad litem for minor plaintiff K.W., filed this action against defendants Riverside County and Riverside County Sheriff's Deputies Does 1 through 10. On September 15, 2008, the Court granted plaintiffs leave to file a first amended complaint ("FAC"). On October 3, 2009, plaintiffs filed a FAC against defendants Riverside county; Armando Portales ("Portales"), Juvien Galzote ("Galzote"), Isaac Perez ("Perez"), and Andrew Sullivan ("Sullivan"), each individually and as County of Riverside Deputy Sheriffs; and Riverside County Sheriff's Deputies Does 4 through 10.

Plaintiffs are the surviving minor children of Keith Silas Watkins ("Watkins" or "decedent").  FAC ¶ 3.  Plaintiffs allege that Portales, Galzote, Perez, and Sullivan fatally shot Watkins on January 23, 2007, and that this use of force against Watkins was unreasonable, excessive, and deadly.  FAC ¶ 11-12, 14.  Plaintiffs brought claims for (1) civil rights violations pursuant to 42 U.S.C. § 1983 ("§ 1983") and (2) wrongful death.

On June 12, 2009, the Court dismissed plaintiff T.D.W. without prejudice as a result of T.D.W. and Byrd's repeated failure to appear for deposition and failure to respond the Court's order to show cause.

This case was tried to a jury on September 22-25, 2009 and September 29-30, 2009.  On September 30, 2009, the jury returned a verdict in favor of plaintiffs.  The jury found:

QUESTION 1:

Did plaintiffs prove by a preponderance of the evidence that Officers Armando Portales, Juvien Galzote, Isaac Perez, or Andrew Sullivan used excessive force against Keith Watkins?

| | | |
|---|---|---|
| Armando Portales | YES_____ | NO _X___ |
| Juvien Galzote | YES_____ | NO _X___ |
| Isaac Perez | YES_____ | NO_X___ |
| Andrew Sullivan | YES_____ | NO _X___ |

Special Verdict Form.

On November 16, 2009, plaintiffs filed the instant motion for a new trial.  On December 4, 2009, defendants filed an opposition.  A reply was filed on December 21, 2009.  A hearing was held on March 8, 2010.  After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

A court may grant a new trial if the jury's verdict is against the clear weight of the evidence.  Landes Const. Co., Inc. v. Royal Bank of Can., 833 F.2d 1365, 1371

1   (9th Cir. 1987). In considering a Fed. R. Civ. P. 59 motion, the court may "weigh the
2   evidence and assess the credibility of witnesses, and need not view the evidence from
3   the perspective most favorable to the prevailing party." Id. at 1371-72 (citing 11 C.
4   Wright & A. Miller, Federal Practice and Procedure § 2806, at 48-49 (1973) ("If,
5   having given full respect to the jury's findings, the judge on the entire evidence is left
6   with the definite and firm conviction that a mistake has been committed, it is to be
7   expected that he will grant a new trial.")). However, the court should only grant a new
8   trial if, without substituting its judgment for that of the jury, the court is firmly
9   convinced that the jury made a mistake. Landes Constr. Co., 833 F.2d at 1372.

10

11  **III.    DISCUSSION**

12          **A.      Plaintiffs' Motion for a New Trial**

13                 **1.      Whether the Verdict is Contrary to the Clear Weight of the**

14                          **Evidence**

15          Plaintiffs argue that the verdict was against the clear weight of the evidence.
16  Mot. at 2. First, plaintiffs assert that all four deputies fired at decedent before his
17  vehicle coasted into Deputy Perez's vehicle, and that the only evidence offered by
18  defendants to justify the initial shots fired as decedent drove through the escape route
19  they created was that the shots were fired under a subjective fear that decedent was
20  going to run over Deputy Portales and Deputy Perez. Id. at 4. However, plaintiffs
21  argue that the only evidence to support this fear was the "self-serving" testimony of
22  defendants that they had a subjective fear at the time they shot, and that this testimony
23  both lacked credibility and was flatly contradicted by weighty and objective evidence
24  at trial. Id. Second, plaintiffs assert that the clear weight of the evidence
25  demonstrates that the shots fired by the deputies after decedent's vehicle coasted into
26  Deputy Perez's car and stopped was unjustified and excessive, because none of the
27  deputies was shooting to protect themselves or each other, or in response to any threat
28  or serious harm. Id. at 9.

1   Plaintiffs further argue that the deputies "had zero credibility as to their
2   reported fear," because all of the defendant officers had substantial motive to
3   exaggerate the circumstances of the incident in order to avoid liability and loss of
4   standing within the department, and furthermore "each demonstrated a selectively
5   good memory of circumstances tending to support the defense theory and a selectively
6   bad memory of circumstances suggesting that the shootings were excessive." Id. at
7   12.

8   Defendants respond that they presented sufficient evidence for a jury to find
9   that the deputies were protecting themselves or each other when they shot at
10   decedent's car, because they testified that it first appeared that he was going to run the
11   vehicle into two of the deputies, and then after his car stopped, decedent lunged with
12   his right hand and upper body into the back seat in what appeared to be an attempt to
13   get a weapon. Opp'n at 19. Defendants contend that case law holds that shots fired in
14   response to attempts to use a vehicle to run over a law enforcement officer are a
15   reasonable use of force. Id. at 20 (citing Scott v. Harris, 550 U.S. 372 (2007); Pace v.
16   Copobianco, 283 F.3d 1275 (11th Cir. 2002); Hernandez v. Jarman, 340 F.3d 617 (8th
17   Cir. 2003); Robinson v. Arrugueta, 415 F.3d 1252 (11th Cir. 2005)). Defendants
18   further contend that it is reasonable to use deadly force when a suspect ignores
19   commands and reaches into an area which can contain a weapon. Id. at 22 (citing
20   Billington v. Smith, 283 F.3d 1275 (11th Cir. 2002); Parks v. Pomeroy, 387 F.3d 949
21   (8th Cir. 2004)).

22   Defendants additionally assert that deputy Galzote was the only officer who
23   fired a shotgun, and the evidence shows that none of the shots fired by him ever struck
24   decedent. Id. at 23. Therefore, defendants argue that Galzote is not liable for a Fourth
25   Amendment violation here, because the Fourth Amendment only applies if there has
26   been a seizure, and shooting and missing is not a seizure and thus is not a potential
27   basis for liability. Id. (citing Brower v. County of Inyo, 489 U.S. 593 (1989) (holding
28   that a seizure occurs only when freedom of movement is actually restricted); Cameron

1
2
3
4
5
6

v. Pontiac, 813 F.2d 782, 785 (6th Cir. 1987) (holding that shooting at a suspect and missing is not a seizure, even if as a result of the shots the suspect runs onto the street and is hit)). Finally, defendants assert that it was the province of the jury to determine whether the witnesses were credible and how to resolve conflicts in their testimony. Id. at 24. Defendants argue that at the time they gave their statements they were tired, and the jury properly determined which witnesses were credible. Id. at 25.

7
8
9
10
11
12
13

The Court finds that defendants provided sufficient evidence for a jury to find that the deputies' use of deadly force was reasonable under the circumstances. See Graham v. Connor, 490 U.S. 386, 396 (1989); Tennessee v. Gardner, 471 U.S. 1, 8-9 (1985). The Court concludes that the jury's verdict was not against the clear weight of the evidence, because the jury could have found the testimony of the deputies credible. Accordingly, the Court DENIES plaintiffs' motion for a new trial. Landes Const. Co., Inc., 833 F.2d at 1371 (9th Cir. 1987).

14

### 2.    Admission of Drug Evidence

15
16
17
18
19
20
21
22

The Court ruled during trial that evidence of decedent's intoxication itself was admissible during liability, over plaintiffs' objections, but also excluded evidence of the cocaine pipe in decedent's car and excluded evidence of decedent's outstanding warrant at the time of the incident. Mot. at 16; Opp'n at 8. Accordingly, the following was read to the jury, based on a joint stipulation by the parties: "The Coroner's Office conducted tests of the blood of Mr. Watkins. The cocaine found in the blood was evidence of recent use by Mr. Watkins within the past 2 - 12 hours, and that he was intoxicated from the cocaine at the time of his death." Id.

23
24
25
26
27
28

Plaintiffs argue that the admission of this "irrelevant and highly prejudicial evidence of decedent's cocaine use and intoxication is an independent reason why a new trial is required." Mot. at 15. Plaintiffs assert that no questions were asked during voir dire about drug use and no limiting instruction was given. Id. Plaintiffs argue that only evidence of facts and circumstances known to the officers during their encounter with decedent is relevant and therefore admissible. Id. at 16 (citing

Graham, 490 U.S. at 397 (holding that in addressing an excessive force case under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.")). Plaintiffs assert that no defendant testified that his suspicion that decedent may have been intoxicated was involved in their decision to use deadly force, and no defendant testified that he formed the opinion that decedent was under the influence of any particular substance, or that the particular substance made any difference to their decision to use deadly force. Id.

Defendants respond that the Court's ruling was correct, because decedent's intoxication was relevant as it explained his actions, why he fled, and why he acted "so irrationally." Opp'n at 8. Defendants argue that decedent's intoxication corroborates defendants' version of what occurred, including that during the pursuit, decedent stared at deputy Portales in a manner that suggested he was on drugs; before he began driving toward deputy Portales, decedent stared into a spotlight without flinching; and prior to the third volley, decedent lunged into the backseat—while plaintiffs' contend that it would have been irrational to do so when there was no gun in the back seat, decedent's intoxication is an explanation for this conduct. Id. at 8-9 (citing Boyd v. City and County of San Francisco, 576 F.3d 938 (9th Cir. 2009)). Defendants further assert that plaintiffs never requested any questions about drug use during voir dire and that they never requested any limiting instruction. Id. at 11.

The Court finds that it did not err in admitting evidence of decedent's intoxication, because this evidence was probative of decedent's conduct, particularly when defendants contended that decedent's erratic behavior immediately proceeding and at the time of the shooting led to their use of force. See Boyd, 576 F.3d at 949 (affirming district court holding in excessive force case that evidence that decedent "was on drugs at the time of the shooting was highly probative of his conduct, particularly in light of his alleged erratic behavior"); see also Harris v. Clark, 2009 U.S. Dist. LEXIS 636643, *6-7 (E.D. Wis. 2009) ("Whether plaintiff was under the

influence of drugs or alcohol at that time is highly relevant to assessing the totality of the circumstances surrounding Clark's use of force."); Saladido v. Winkler, 609 F.2d 1211, 1214 (7th Cir. 1979) ("This evidence tends to make more probable that the plaintiff acted as the defendant contended he did or that plaintiff otherwise conducted himself in such a manner as to place the defendant reasonably in fear of his life."); Turner v. White, 980 F.2d 1180, 1183 (8th Cir. 1992). Because the evidence was presented to the jury in a non-inflammatory two sentence statement to which both parties stipulated, the Court properly found that the probative value of this evidence outweighed its prejudicial effect.

### 3.   Law Enforcement Bias of Jury

Plaintiffs argue that the jury was biased in favor of law enforcement officers as a result of the following developments, which plaintiffs contend improperly influenced a defense verdict. Mot. at 19. First, plaintiffs argue that the Court should not have denied plaintiffs' for cause challenges to jurors with friends or family who were law enforcement officers, because these ties may have biased these jurors in favor of defendants. Id. at 20-21. Plaintiffs assert that three prospective jurors informed the Court that they had immediate family members or close friends who were law enforcement offices, including the last juror on the panel, Mr. Rodriguez, who stated that his best friend's brother worked for defendant Riverside County Sheriff's Department. Id. at 19. Second, plaintiffs argue that there was insufficient voir dire as to jurors' potential bias in favor of law enforcement officers, and that the Court should have questioned the jurors regarding the weight they would give the testimony of the law enforcement officers. Id. at 20 (citing Darbin v. Nourse, 664 F.2d 1109, 1112 (9th Cir. 1981); U.S. v. Contreras-Castro, 825 F.2d 185, 187 (9th Cir. 1987)). Third, plaintiffs argue that the Court erred by declining to give plaintiffs' proposed jury instruction that law enforcement officers are not inherently more credible than lay witnesses. Id. (citing Fattahi Decl, Ex. F; United States v. Baldwin, 607 F.2d 1295, 1298 (9th Cir. 1979) (holding that the sufficiency of voir dire must be

evaluated in light of several factors, including the extent to which attitude toward law enforcement agents is covered "in the jury instructions")).

Defendants respond that plaintiffs did not submit any declarations from jurors and presented no other evidence that suggests that any additional voir dire questions would have disclosed a bias toward the officers. Id. at 2-3. Defendants assert that plaintiffs have shown neither actual bias nor implied bias. Id. (citing Fields v. Brown, 503 F.3d 755, 767 (9th Cir. 2007) ("Actual bias is typically found when a prospective juror states that he cannot be impartial, or expresses a view adverse to one party's position and responds equivocally as to whether he could be fair and impartial despite that view."); U.S. v. Mitchell, 568 F.3d 1147 (9th Cir. 2009) (presuming a challenged juror's implied bias in the "extreme" or "extraordinary" case "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances"). Indeed, defendants contend that knowing a law enforcement officer or having a law enforcement officer in the family is not a basis for implied bias. Id. at 3 (citing Tinsley v. Borg, 895 F.2d 520,  (9th Cir. 1990)). Defendants further assert that the only juror plaintiffs mention by name is Rodriguez, and that plaintiffs have given no basis for disqualification of the other jurors who purportedly should have been excused for cause. Id. Defendants further assert that plaintiffs' statement about Rodriguez is contrary to the record, because Rodriguez actually said he has a passing acquaintance who is the brother of a friend who works for the County of Riverside, and a passing acquaintance is not a basis for disqualification for cause. Id.

Second, defendants respond that plaintiffs had the opportunity to submit proposed voir dire questions before trial but submitted nothing at all, contrary to Darbin, 664 F.2d at 1109, and Baldwin, 607 F.2d at 1298, where the court refused to ask questions which had been expressly requested by the appellant. Opp'n at 1. Defendants assert that during voir dire, the Court asked the parties if there were any questions they wanted the Court to ask, and then asked questions on every topic

requested by the parties.  Id.  Defendants further argue that Paine v. City of Lompoc, 160 F.3d 562, 565 (9th Cir. 1998), distinguished Darbin, by stating: "All Darbin stands for is that the judge cannot conduct a one-sided inquiry, because the facts in that case were that the judge asked about prejudice against police officers but not prejudice in their favor.  Only people related to police officers were asked whether that would prejudice them either way."  Id.  Defendants assert that here the Court did not conduct such a one-sided inquiry.  Id.

Third, defendants respond that plaintiffs did not request a proposed jury instruction that law enforcement officers are not inherently more credible than lay witnesses before trial, as both parties were ordered to do, but instead first mentioned it during trial on September 24, 2009, at a point where neither defense counsel nor the Court had adequate time to address it.  Id. at 5.  Further, defendants argue that after the Court announced its intended instructions, plaintiffs made no objection, and thus waived any objection to the  jury instructions.  Id. (citing Fed. R. Civ. P. 51; Shaw v. City of Sacramento, 250 F.3d 1289, 1293 (9th Cir. 2001); Wright v. Wilburn, 194 F.R.D. 54, 58-59 (N.D. N.Y. 2000)).  Finally, defendants assert that the cases cited by plaintiffs do not support plaintiffs' argument regarding the proposed jury instruction, but instead involve voir dire.  Id.

Plaintiffs reply that during voir dire, counsel for all parties held a side bar with the Court, wherein plaintiffs' counsel requested that the Court conduct additional questioning of the jury in order to ascertain law enforcement bias, but that the Court denied the request based on the earlier questioning of jurors as to whether they could be fair.  Reply at 14 (citing Galipo Decl. at ¶ 3).  Plaintiffs assert that the Court stated that such questioning was sufficient.  Id.  Plaintiffs further reply that there can be no evidence supporting a challenge for cause where no questions were asked that would have solicited an admission of juror prejudice or some other evidence to support a challenge for cause in the first place.  Id.  Plaintiffs assert that Juror Rodriguez's connection with the Riverside County Sheriff's Department was far from a passing

1    acquaintance, and was instead his brother's best friend.  Id.

2          The Court finds that plaintiffs have failed to demonstrate that the voir dire was

3    insufficient.  First, the Court did not err by denying plaintiffs' for cause challenges to

4    jurors who had friends or family members who were law enforcement officers,

5    because plaintiffs failed to demonstrate that this situation is one in which "courts have

6    been willing to presume bias," and have not alleged a specific showing of bias by any

7    of the jurors during voir dire.  Tinsley, 895 F.2d at 529 ("We will not presume bias

8    merely because a juror works in law enforcement. . . . [D]emonstration of actual juror

9    bias or beliefs is required."); U.S. v. West, 458 F.3d 1, 8 (D.C. Cir. 2006) ("Finally,

10   and critically, West does not allege that any juror who sat on his case was actually

11   biased against him. . . . Nor can we presume that a juror's connections to law

12   enforcement . . . standing alone, are suffic[ient] to establish implied bias, [even] a

13   defendant accused of murdering a police officer is not entitled to a jury free of

14   policemen's relatives.").

15         Second, the Court finds that it did not err by refusing to further question the

16   potential jurors regarding any law enforcement bias, because the Court had already

17   sufficiently questioned all the jurors in this regard and also instructed them that they

18   must "analyze the testimony of each witness in the same way."[1]  See Darbin, 664 F.2d

19   _____

20       [1] During voir dire, the Court stated to the potential jurors:

21

22       In this case one of your big tasks will be to evaluate the credibility of
         witnesses.  And I'm going to instruct you that you must analyze the
23       testimony of each witness in the same way.  And so my question to
         you is would any of you have difficulty treating a police officer's
24       testimony just as you would any other witness's testimony?  Please
         raise your hand if you think that would be troubling for you.  I'm
25       really asking are you inclined to believe police officers simply
         because they are police officers?
26

27   The Court further asked:

28                                                                (continued...)

at 1115 ("Under the circumstances here involved, the refusal to inquire on voir dire into the favorable bias jurors might accord the testimony of law enforcement officers constitutes an abuse of discretion . . . "); Paine, 160 F.3d at 565 (finding that "plain instructions by the judge not to accord extra deference to police credibility" weighs against abuse of discretion).

Finally, the Court finds that plaintiffs have failed to show that the Court erred by declining to give plaintiffs' proposed jury instruction that law enforcement officers are not inherently more credible than lay witnesses. Indeed, the cases plaintiffs cite for this proposition focus on voir dire, rather than jury instructions. See, e.g., Darbin, 664 F.2d at 1109, Baldwin, 607 F.2d at 1298. Furthermore, plaintiffs have waived this claim because they did not timely object to the Court's proposed instructions pursuant to Fed R. Civ. P. 51.

### 4.   Contributory Negligence Evidence

Plaintiffs argue that the Court erroneously permitted defense counsel to introduce evidence of decedent's drug use and his failure to yield while driving, which defense counsel characterized as decedent's own negligent conduct. Mot. at 22. Plaintiffs assert that defense counsel then impermissibly argued that decedent's own negligent conduct contributed to the deputies' use of excessive force, and that this was improper because decedent's alleged contributory negligence is no defense and is irrelevant to the applicable legal standard under Garner and Graham. Id. Plaintiffs assert that this evidence was irrelevant and served no purpose at trial other than to

---

[1](...continued)

[D]o any of you believe that officers cannot be found to have used excessive force? So in other words what I'm asking you, do you believe that it is impossible that an officer could use excessive force? And if you determine that an officer used excessive force, would you be able to find that officer liable for a violation of the decedent's civil rights?

prejudice plaintiffs by inflaming and misleading the jury.  Id.

As previously discussed, the Court finds that evidence of decedent's intoxication was probative of his conduct, particularly when defendants contended that decedent was behaving erratically immediately proceeding and at the time of the shooting, and that this erratic behavior raised the level of apparent threat to the deputies and thereby contributed to their decision to use force.  See Boyd, 576 F.3d at 949.  Similarly, the Court finds that the decedent's failure to yield while driving was evidence of his erratic behavior, and thus that it was relevant.  Accordingly, the Court finds that it did not err by admitting this evidence.

### 5.   Excessive Force Jury Instruction

Plaintiffs argue that the final instructions given to the jury contained the Ninth Circuit Model Instruction on excessive force, "which was misleading, confusing, and difficult to apply to the evidence presented at trial."[2]  Mot. at 22.  Plaintiffs argue that

---

[2] The Court gave the following instruction:

**JURY INSTRUCTION NO. 14**

SECTION 1983 CLAIM **-** PARTICULAR RIGHTS UNDER THE
FOURTH AMENDMENT: UNREASONABLE SEIZURE OF PERSON -
DEADLY FORCE

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest and/or in defending himself and others.  Thus, in order to prove an unreasonable seizure in this case, plaintiffs must prove by a preponderance of the evidence that at least one officer used excessive force when he shot at Keith Watkins.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances.  In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.

(continued...)

the factors were vague and largely inapplicable to the case, such as the inclusion of

"attempting to flee," because in <u>Garner</u> the Supreme Court rejected the proposition

that the flight of a nonviolent suspect could ever justify shooting him to prevent his

escape.  <u>Id.</u> at 23.  Plaintiffs clarify that the instruction was misleading because it was

given without corresponding instructions based on <u>Tennessee v. Garner</u>, 471 U.S. 1

(1985), and <u>Billington v. Smith</u>, 292 F.3d 1177 (9th Cir. 2002), and because the

instruction bore the misleading label "Deadly Force."  Reply at 16.


        Plaintiffs argue that the Court should have given an instruction based on

<u>Garner</u>, because it accurately states the constitutional inquiry in cases of shooting at a

suspect, and <u>Scott v. Harris</u> did not reverse it.  <u>Id.</u> at 24 (citing <u>United States v.

Guzman-Padilla</u>, 573 F3d 865, 887 (9th Cir. 2009)).  Plaintiffs further argue that the

Court should have given an instruction on the "danger creation" theory set forth in

<u>Alexander v. City and County of San Francisco</u>, 29 F.3d 1355, 1366-67 (9th Cir.

1994), because in this case, if the deputies' initial shots were excessive but did not kill

---

[2](...continued)
        In determining whether any officer used excessive force in this
    case, consider all of the circumstances known to Officers Portales,
    Galzote, Perez, and Sullivan on the scene, including:

    1.    The severity of the crime or other circumstances to which the
          officers were responding;
    2.    Whether Mr. Watkins posed an immediate threat to the safety of
          the officers or to others;
    3.    Whether Mr. Watkins was actively resisting arrest or attempting
          to evade arrest by flight;
    4.    The amount of time and any changing circumstances during
          which the officers had to determine the type and amount of force
          that appeared to be necessary;
    5.    The type and amount of force used;
    6.    The availability of alternative methods to take Mr. Watkins into
          custody or to subdue him.

decedent, they still should have been subjected to <u>Alexander</u> scrutiny to the extent they may have provoked decedent or other deputies into escalating the situation and thereby causing decedent's death.  <u>Id.</u> (citing <u>Marsall</u>, 2004 WL 1048127, at *19).

Defendants respond that plaintiffs fail to mention that they themselves twice proposed an almost identical instruction, they failed to submit the proposed instructions by the deadline, and failed to make any objection after the Court announced its intended instructions.  Opp'n at 6.  Defendants further respond that plaintiffs' proposed instruction on "deadly force" should not have been used, because while prior to late 2007, Ninth Circuit case law required that a special "deadly force" jury instruction be given where the evidence indicated that deadly force had been utilized, in 2007 the Supreme Court in <u>Scott v. Harris</u>, 550 U.S. 372, 127 (2007), held that there is no special Fourth Amendment standard for "deadly force," and that instead "all that matters is whether [the officer's] actions were reasonable."  <u>Id.</u> at 6-7 (citing <u>Acosta v. Hill</u>, 504 F.3d 1323 (9th Cir. 2007)).  Therefore, defendants argue that consistent with <u>Acosta</u> and <u>Scott</u>, "the Ninth Circuit model excessive force instruction indicates that it is to be used for both deadly and non-deadly force cases." <u>Id.</u> (quoting <u>Wisler v. City of Fresno</u>, 2008 U.S. Dist. LEXIS 73223 (E.D. Cal. 2008)).

Finally, defendants argue that a "danger creation" theory should not have been given, because that instruction is proper only if the act which created the need to use force was an independent constitutional violation.  <u>Id.</u> at 7 (citing <u>Billington v. Smith</u>, 292 F.3d 1177, 1189 (9th Cir. 2002) ("We read <u>Alexander</u>, as limited by <u>Duran</u>, to hold that where an officer intentionally or recklessly provokes a violent confrontation, *if the provocation is an independent Fourth Amendment violation*, he may be held liable for his otherwise defensive use of deadly force") (emphasis added)). Defendants argue that the proposed instruction misstated the law, is argumentative, and there was no evidence of any independent constitutional violation which created a need to use force.  <u>Id.</u> at 8.

14

1   Plaintiffs reply that although they did not timely object to this instruction, at
2   minimum the Court should review for plain error, because there is an obvious instance
3   of injustice and misapplied law, and objecting would have been a pointless formality.
4   Reply at 18 (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 255-56
5   (1981); Monroe v. City of Phoenix, 248 F.3d 851, 858-59 (9th Cir. 2001)).

6       Plaintiffs concede that they failed to timely object to this jury instruction, and
7   the Court concludes that it did not plainly err in giving the instruction.  See Fed. R.
8   Civ. P. 51.  Furthermore, the Court finds that the Ninth Circuit Model Instruction on
9   excessive force, used in this case, was proper, and that it did not err by including the
10  words, "deadly force" on the instruction because such force was used by the officers.
11  The Ninth Circuit Model Instruction is to be used for both deadly and non-deadly
12  force cases, and need not be supplemented here.  See Scott, 550 U.S. at 372 (holding
13  that there is no special Fourth Amendment standard for "deadly force," and that
14  instead "all that matters is whether [the officer's] actions were reasonable."); Acosta,
15  504 F.3d at 1323-24 ("We had previously held that '[a]n excessive force instruction is
16  not a substitute for a . . . deadly force instruction.'  We reached this conclusion based
17  on the observation that 'the Supreme Court . . . established a special rule concerning
18  deadly force.  Scott explicitly contradicts that observation. . . . Monroe's holding that
19  an excessive force instruction based on the Fourth Amendment's reasonableness
20  standard is not a substitute for a deadly force instruction is therefore overruled.")
21  Moreover, the Court did not err by not including an instruction pursuant to Alexander,
22  because plaintiffs did not claim in their first amended complaint that the officers
23  violated the Fourth Amendment by provoking the use of deadly force.  Furthermore,
24  as here, "[a]n Alexander instruction is unnecessary where there is not evidence to
25  show that the officer's actions were excessive and unreasonable and caused the
26  escalation that led to the shooting, and where the evidence does not show that the
27  officer's actions should have provoked an armed response."  Billington v. Smith, 292
28  F.3d 1177, 1189 (9th Cir. 2002).

In accordance with the foregoing, the Court DENIES plaintiffs' motion for a new trial.

**B.     Defendants' Rule 50 Motions**

Because the Court denied plaintiffs' motion for a new trial, the judgment in favor of the defendants stands.  Accordingly, defendants' Rule 50 motions are moot.

**IV.     CONCLUSION**

In accordance with the foregoing, the Court DENIES plaintiffs' motion for a new trial, and thus DENIES defendants' Rule 50 motions as moot.

IT IS SO ORDERED.

Dated: March 11, 2010

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE